1  LUANNE SACKS, Bar No. 120811
   luanne.sacks@dlapiper.com
2  JOHN R. HURLEY, Bar No. 203641
   john.hurley@dlapiper.com
3  DLA PIPER LLP (US)
   555 Mission Street, Suite 2400
4  San Francisco, CA  94105-2933
   Tel:  415.836.2500
5  Fax:  415.836.2501

6  Attorneys for Defendant
   SONY COMPUTER ENTERTAINMENT
7  AMERICA INC.

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  In re SONY PS3 LITIGATION          CASE NO.  C09-04701 MHP

13                                     **DEFENDANT'S MOTION TO DISMISS**

14                                     Date:  March 22, 2010
                                       Time:  2:00 p.m.
15                                     Dept:  15
                                       Judge:  Hon. Marilyn Hall Patel
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3

4
I.     INTRODUCTION.............................................................................................. 1

5
II.    STANDARD FOR DISMISSAL UNDER RULE 12(b)(6). ................................ 2

6
III.   LEGAL ARGUMENT ...................................................................................... 4

7
   A.   Plaintiffs Cannot Premise a Breach of Implied Warranty on a Post-Sale
        Event that Supposedly Diminished the Value of Their PS3 Consoles........................... 4

8

9
   B.   California does not Recognize an Independent Cause of Action for "Unjust
        Enrichment", and Plaintiffs Lack Standing to Assert Such a Claim. .......................... 6

10
   C.   Plaintiffs' Claim of Negligence is Barred by the Economic Loss Rule. ...................... 7

11
   D.   Plaintiffs Lack Standing to Assert UCL Claims Because the Allegations in
        the Complaint do not Support a Restitutionary Remedy............................................... 9

12
IV.   CONCLUSION................................................................................................ 11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS
                                        CASE NO.  C09-04701

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4
*Aas v. Superior Court*,
   24 Cal.4th 627 (2000) ................................................................................. 8

5
*Am. Suzuki Motor Corp. v. Super. Ct.*,
   37 Cal.App.4th 1291 (1995) ..................................................................... 5, 6

6
*Anunziato v. eMachines, Inc.*,
   402 F.Supp.2d 1133 (C.D. Cal. 2005) ....................................................... 4, 5

7
*Ashcroft v. Iqbal*,
   --- U.S. ----, 129 S.Ct. 1937 (2009) ............................................................ 3

8
*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1988) ......................................................................... 2

9
*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 3

10
*Buckland v. Threshold Enterprises, Ltd.*,
   155 Cal.App.4th 798 (2007) ..................................................................... 9, 10

11
*Burr v. Sherwin Williams Co.*,
   42 Cal.2d 682 (1954) .................................................................................... 4

12
*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) .......................................................................... 2

13
*Californians for Disability Rights v. Mervyn's, LLC*,
   39 Cal.4th 223 (2006); ................................................................................. 9

14
*Carlson v. General Motors Corp.*,
   883 F.2d 287 (4th Cir. 1989) ..................................................................... 5, 6

15
*Citizens of Humanity, LLC v. Costco Wholesale Corp.*,
   171 Cal.App.4th 1 (2009) ........................................................................... 10

16
*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...................................................................... 5

17
*Feinstein v. Firestone Tire & Rubber Co.*,
   535 F.Supp. 595 (S.D.N.Y. 1982) ................................................................ 5

18
*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) ...................................................................................... 7

19
*Hargett v. Midas International Corp.*,
   508 So.2d 663 (Miss. 1987) ......................................................................... 5

20
*Hovsepian v. Apple, Inc.*,
   2009 WL 2591445 (N.D. Cal. 2009) ............................................................ 5

21
*Jimenez v. Superior Court*,
   Cal.4th 473 (2002) ........................................................................................ 8

22
*Jogani v. Superior Court*,
   165 Cal.App.4th 901 (2008) ......................................................................... 6

23
*Larsen v. Nissan N. Am.*,
   2009 WL 1766797 (Cal. Ct. App. 2009) ...................................................... 5

24
*Lauriedale Assocs., Ltd. v. Wilson*,
   7 Cal.App.4th 1439 (1992) ........................................................................... 7

25
*Levine v. Diamanthuset, Inc.*,
   950 F.2d 1478 (9th Cir. 1991) ...................................................................... 2

26
*Makuc v. American Honda Motor Co.*,
   835 F.2d 389 (1st Cir. 1987) ........................................................................ 5

27
*Medina v. Safe-Guard Products, International, Inc.*,
   164 Cal.App.4th 105 (2008) ......................................................................... 9

28
*Melchior v. New Line Prods., Inc.*,
   106 Cal.App.4th 779 (2003) ......................................................................... 7

DEFENDANT'S MOTION TO DISMISS
CASE NO.  C09-04701

*Moss v. U.S. Secret Service,*
572 F.3d 962, 969 (9th Cir. 2009)................................................................................................ 3

*Osborne v. Subaru of America, Inc.,*
198 Cal.App.3d 646 (1988)......................................................................................................... 5

*Ove v. Gwinn,*
264 F.3d 817 (9th Cir. 2001)....................................................................................................... 3

*Peterson v. Cellco Partnership,*
164 Cal.App.4th 1583 (2008) ..................................................................................................... 9

*Robinson Helicopter Co., Inc. v. Dana Corp.,*
34 Cal.4th 979 (2004)................................................................................................................. 8

*Seely v. White Motor Co.,*
63 Cal.2d 9 (1965) ...................................................................................................................... 8

*Skelton v. General Motors Corp.,*
500 F.Supp. 1181 (N.D. Ill. 1980) ............................................................................................. 5

*SmileCare Dental Group v. Delta Dental Plan of California, Inc.,*
88 F.3d 780 (9th Cir. 1996)......................................................................................................... 2

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001)....................................................................................................... 3

*Taterka v. Ford Motor Co.,*
86 Wis.2d 140, 271 N.W.2d 653 (1978) ..................................................................................... 5

*United States Roofing, Inc. v. Credit Alliance Corp.,*
228 Cal.App.3d 1431 (1991)....................................................................................................... 4

*Walker v. Geico General Ins. Co.,*
558 F.3d 1025 (2009)................................................................................................................ 10

*Walker v. USAA Casualty Insurance Co.,*
474 F.Supp.2d 1168 (E.D. Cal. 2007)...................................................................................... 10

*Warth v. Seldon,*
422 U.S. 490 (1975).................................................................................................................... 7

*Western Mining Council v. Watt,*
643 F.2d 618 (9th Cir. 1981)....................................................................................................... 2

**Statutes**
Civil Code § 1790 ........................................................................................................................ 4
Civil Code § 1792 ........................................................................................................................ 4
Comm. Code § 2314 .................................................................................................................... 4
U.C.C., § 2725(2)......................................................................................................................... 5

**Treatises**
1 White & Summers, Uniform Commercial Code (5th ed. 2006) ................................................ 5

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on March 22, 2009 at 2:00 p.m. in Courtroom 15 of the above court, located at 450 Golden Gate Ave, San Francisco, California, defendant Sony Computer Entertainment America Inc. ("SCEA") will move for dismissal of the First, Second, Third and Fourth Claims for Relief asserted in the Amended Consolidated Class Action Complaint (the "Complaint") in this matter. SCEA's motion will be brought pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that the Complaint fails to state facts sufficient to constitute a claim for relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs John Kennedy, John Evers, Everett Horn, Gary Katzer, and Leslie Laluzerne (collectively "Plaintiffs") allege that they are part of a small group of PlayStation®3 ("PS3") owners who experienced performance problems after installing system software updates issued by SCEA in September 2009 (referred to as "Firmware 3.0" and "Firmware 3.01" by Plaintiffs).[1] Plaintiffs claim that Firmware 3.0 and/or 3.01 could cause a whole host of problems, including "freezing" during game play, loss of controller use, slower console start-ups, malfunction of the PS3's Blu-ray drive, or complete inoperability.[2] Notably, none of the Plaintiffs specify what type or types of malfunctions they may have experienced—and none of them assert that their PS3 completely stopped working.[3]

Based on vague and non-specific allegations that their PS3 consoles had "failures of the type complained of herein,"[4] Plaintiffs each assert claims under four different legal theories:

    1.   Breach of Implied Warranty;

    2.   Unjust Enrichment;

---

[1] Cplt. ¶¶ 1-10.
[2] Cplt. ¶¶ 3, 29.
[3] Cplt. ¶¶ 6-10.
[4] Cplt. ¶¶ 6-10.

DEFENDANT'S MOTION TO DISMISS
CASE NO. C09-04701

3.  Negligence; and

4.  Violation of California's Unfair Competition Law (the "UCL"), Business & Professions Code § 17200, *et seq.*

Plaintiffs' claims are all legally and factually deficient.  The claim for breach of implied warranty fails because of lack of privity, because it is not premised upon the condition of the consoles at the time of purchase, and because Plaintiffs do not allege that their consoles failed completely.  The claim for unjust enrichment fails both because California does not recognize unjust enrichment as an independently actionable legal theory and because Plaintiffs have not alleged that they gave money to SCEA which could be returned to them.  This same deficiency defeats the UCL claim as well.  Plaintiffs do not allege that they paid any money to Sony in connection with the Firmware updates.  As a result, they have not alleged a basis for a restitutionary remedy which is a necessary predicate for a claim under the UCL.  Even the negligence claim is faulty—Plaintiffs allege that future firmware updates were something they paid for when they initially purchased their PS3 consoles.  As a result, the negligence claim is barred by the economic loss rule.

As discussed fully herein, Plaintiffs' Complaint does not allege facts sufficient to support any asserted claim, and the entire action should be dismissed.

## II.    STANDARD FOR DISMISSAL UNDER RULE 12(b)(6).

Rule 12(b)(6) requires dismissal if a complaint lacks sufficient facts to support a claim or fails to assert a cognizable legal theory.[5]  The Court's review is limited to the face of the complaint, documents referenced in the complaint, and matters of which the court may take judicial notice.[6]  Although the Court must accept all material factual allegations as true, the Court is not required to accept unwarranted or unreasonable inferences, legal conclusions cast in the form of factual averments, or allegations contradicted by judicially noticed facts.[7]

---

[5] *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

[6] *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991).

[7] *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-

-2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The United States Supreme Court has clarified recently that district courts must reject a complaint if its factual content fails to plausibly support the averred claim for relief.  In the 2007 case *Bell Atlantic Corp. v. Twombly*, the plaintiffs brought a conspiracy claim under Section 1 of the Sherman Act.[8]  Although the plaintiffs alleged facts suggesting parallel market conduct, they did not allege specific facts indicating an actual agreement in restraint of trade.[9]   In reversing the Second Circuit's denial of a Rule 12(b)(6) motion, the Supreme Court held that an antitrust plaintiff must plead facts "plausibly suggesting (not merely consistent with)" a Sherman Act violation to survive a motion to dismiss.[10]

In the 2009 case of *Ashcroft v. Iqbal*, the Supreme Court confirmed that *Twombly* applies beyond the antitrust context.[11]  The Court explained that "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," are not entitled to an assumption of truth on a motion to dismiss.[12]  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]  Thus, as summarized by the Ninth Circuit in *Moss v. U.S. Secret Service*, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences to be drawn from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[14]

---

89 (9th Cir. 2001); *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[9] *See id*. at 553-57.

[10] *See id*. at 557.

[11] *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009).

[12] *Id*. at 1951 (quoting *Twombly*, 550 U.S. at 555).

[13] *Id.* at 1949.

[14] *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

DEFENDANT'S MOTION TO DISMISS
CASE NO.  C09-04701

III.    **LEGAL ARGUMENT**

A. **Plaintiffs Cannot Premise a Breach of Implied Warranty on a Post-Sale Event that Supposedly Diminished the Value of Their PS3 Consoles.**

Plaintiffs' First Claim for Relief asserts that SCEA's distribution of Firmware 3.0 and/or 3.01 breached the implied warranty that came with the PS3 when they bought their consoles. Specifically, Plaintiffs allege that "Defendant provided an implied warranty of merchantability with each of the PS3 units at issue," and that "Defendant breached its implied warranties by requiring users to install the Firmware 3.0 and/or 3.01 update, which rendered the PS3 unfit for the ordinary purpose for which the PS3 units are used."[15]

Under California law, the implied warranty of merchantability arises from two statutory sources—the Song-Beverly Consumer Warranty Act and the Uniform Commercial Code.[16] Plaintiffs do not identify which source of law they rely on—but the claim fails either way.

Song Beverly provides that "consumer goods that are sold at retail **in this state**" are accompanied by an implied warranty of merchantability.[17] Thus, Plaintiffs must allege that they purchased their PS3 consoles in California to state a claim for relief under Song Beverly. In the Complaint, none of the named Plaintiffs allege where they bought their PS3 consoles. Instead, they simply state that they variously reside in Florida, Texas, Iowa, Illinois, and Georgia.[18] The Court cannot presume that Plaintiffs bought their PS3 consoles in California, and Song Beverly is simply inapplicable.[19]

The claim is equally flawed when analyzed under the U.C.C. A plaintiff may only assert a U.C.C. claim for breach of implied warranty against the party from whom he or she directly purchased—"[v]ertical privity is a prerequisite in California."[20] Thus, in *Clemens v.*

---

[15] Cplt. ¶¶ 52, 54.

[16] Civil Code § 1790, *et seq.*; Comm. Code § 2314.

[17] Civil Code § 1792 (emphasis added).

[18] Cplt. ¶¶ 6-10.

[19] *See Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1142 (C.D. Cal. 2005) (dismissing Song-Beverly claim by Massachusetts resident).

[20] *United States Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431, 1441 (1991) (citing *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695-696 (1954); *Osborne v. Subaru of America*,

DEFENDANT'S MOTION TO DISMISS
CASE NO. C09-04701

*DaimlerChrysler Corp.*, the Ninth Circuit held that an "end consumer" who "buys from a retailer" has no U.C.C. claim for breach of implied warranty as against the manufacturer of a product.[21] In this case, Plaintiffs do not allege that they purchased their PS3 consoles directly from SCEA.[22] As a result, they have no U.C.C. claim against SCEA.[23]

Additionally, the warranty implied by the U.C.C. is breached only if a defect existed at the time the product was sold—the product is either merchantable or not (and a breach of the implied warranty occurs or not) only at the time of sale.[24] Here, Plaintiffs do not complain of any problem at the time of sale. Instead, they assert that problems began as much as two years later when they installed the Firmware 3.0 and/or 3.01 updates.[25] Because Plaintiffs' PS3 consoles were merchantable when they bought them, they have no claim for breach of implied warranty.[26]

Finally, the U.C.C. implied warranty of merchantability only "provides for a minimum level of quality."[27] In other words, "the implied warranty of merchantability can be breached only if the [product] manifests a defect that is so basic it renders the [product] unfit for its ordinary purpose."[28] If a product works, but just not as well as the purchaser hoped, no claim arises—the implied warranty "does not impose a general requirement that goods precisely fulfill

---

*Inc.*, 198 Cal.App.3d 646, 656 (1988).)

[21] *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Anunziato*, 402 F.Supp.2d at 1141; *Osborne*, 198 Cal.App.3d at 656 n. 6).

[22] *See* Cplt. ¶¶ 6-10.

[23] *See Clemens*, 534 F.3d at 1023 (upholding 12(b)(6) dismissal of implied warranty claim under California law).

[24] 1 White & Summers, Uniform Commercial Code (5th ed. 2006), § 9-12, pp. 657-658; *Makuc v. American Honda Motor Co.*, 835 F.2d 389, 392-393 (1st Cir. 1987); *Hargett v. Midas International Corp.*, 508 So.2d 663, 665 (Miss. 1987); U.C.C. § 2725(2)).

[25] Cplt. ¶¶ 6-10.

[26] *See Hovsepian v. Apple, Inc.*, 2009 WL 2591445 at *8 n. 7 (N.D. Cal. 2009) (citing *Larsen v. Nissan N. Am.*, 2009 WL 1766797 at *5 n. 6 (Cal. Ct. App. 2009) (unpublished)).

[27] *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal.App.4th 1291, 1295 (1995) (quoting *Skelton v. General Motors Corp.*, 500 F.Supp. 1181, 1191 (N.D. Ill. 1980), rev'd on other grounds, 660 F.2d 311 (7th Cir. 1981)).

[28] *Id.* (citing *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 603 (S.D.N.Y. 1982); *Carlson v. General Motors Corp.*, 883 F.2d 287, 297-298 (4th Cir. 1989); *Taterka v. Ford Motor Co.*, 86 Wis.2d 140, 271 N.W.2d 653 (1978); *Skelton*, 500 F.Supp. at 1191)).

DEFENDANT'S MOTION TO DISMISS
CASE NO. C09-04701

the expectation of the buyer."[29]  Consequently, the implied warranty "[does] not encompass …

'loss of resale value claims.'"[30]

In this case, the named Plaintiffs do not allege that their PS3 consoles failed completely—

i.e., that they were unable to perform basic functions.  Although the Plaintiffs allege that PS3

consoles suffered from symptoms including "freezing" during game play, loss of controller use,

slower console start-ups, malfunction of the PS3's Blu-ray drive, and complete inoperability,[31]

Plaintiffs do not specify which (if any) of these symptoms each of them personally experienced.[32]

Indeed, based on the allegations in the Complaint, the named Plaintiffs may have suffered nothing

more than "slower console start-ups."[33]  Plaintiffs have not alleged facts to show that their PS3

consoles were rendered unfit for their ordinary purpose, and they have not stated a claim for

breach of implied warranty under the U.C.C.[34]

**B.  California does not Recognize an Independent Cause of Action for "Unjust Enrichment", and Plaintiffs Lack Standing to Assert Such a Claim.**

In their Second Claim for Relief, Plaintiffs assert a claim labeled as "unjust enrichment."

This claim suffers from two fatal flaws.  First, California law does not recognize an independent

claim for "unjust enrichment."  Second, even if "unjust enrichment" could serve as a valid,

independent legal theory, none of the Plaintiffs allege that they paid money to SCEA and they

therefore lack standing to assert the claim.

In *Jogani v. Superior Court*, the California Court of Appeal held that "unjust enrichment

is not a cause of action," and "[an] attempt to plead a separate cause of action entitled 'unjust

enrichment' adds nothing" to a complaint.[35]   Similarly, in *Melchior v. New Line Prods., Inc*., the

Court of Appeal stated that "there is no cause of action in California for unjust enrichment," and

---

[29] *Id*. (internal quotation and citation omitted).

[30] *Id.* at 1297 (citing *Carlson*, 883 F.2d at 297-298).

[31] Cplt. ¶¶ 3, 29.

[32] Cplt. ¶¶ 29, 6-10.

[33] Cplt. ¶ 29.

[34] *Am. Suzuki Motor Corp*., 37 Cal.App.4th at 1297; *Carlson*, 883 F.2d at 297-298.

[35] *Jogani v. Superior Court*, 165 Cal.App.4th 901, 911 (2008).

-6-

that "[t]he phrase 'Unjust Enrichment' does not describe a theory of recovery."[36]  This Court reached a similar conclusion in *Oestreicher v. Alienware*, ruling that a plaintiff could not assert an independent claim for unjust enrichment: "[S]ince plaintiff's fraud-based claims have been dismissed, plaintiff has no basis for its unjust enrichment claim."[37]  The same result attends here—"unjust enrichment" is not a theory creating an independent cause of action under California law, and the Second Claim for Relief should therefore be dismissed.

Just as important, none of the named Plaintiffs allege that they personally suffered the type of harm that purportedly forms the basis of the claim.  The Complaint alleges that SCEA was "unjustly enriched" due to its collection of "payments for repair of PS3 units and/or payments for replacement units."[38]  But none of the named Plaintiffs allege that they made any such payments to SCEA.  Plaintiffs uniformly allege that they "[were] informed by Defendant that it would charge [them] approximately $150 to repair [their] PS3 systems[s]"—but none of them allege that they followed through and obtained the repair or that they paid any money to SCEA as a result.[39]

In order to state a claim for relief and to have Article III standing, Plaintiffs must allege facts to show that they suffered the harm of which they complain.[40]  None of the named Plaintiffs have alleged facts showing that they have standing to assert a cause of action for unjust enrichment, and their second claim for relief should be dismissed on that basis.

**C.  Plaintiffs' Claim of Negligence is Barred by the Economic Loss Rule.**

In their most recent Complaint, Plaintiffs allege that the firmware updates at issue were part of an entire package that they purchased.  In Paragraph 17 of the Complaint, Plaintiffs allege that "Defendant advertised, marketed, and sold PS3 systems as a complete system that included the actual PS3 console … and future firmware updates."[41]  Later in Paragraph 19, Plaintiffs allege

---

[36] *Melchior v. New Line Prods., Inc*., 106 Cal.App.4th 779, 793 (2003) (quoting *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448 (1992)).

[37] *Oestreicher*, 544 F.Supp.2d at 975.

[38] Cplt. ¶ 58.

[39] Cplt. ¶¶ 6-10.

[40] *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Warth v. Seldon*, 422 U.S. 490, 502 (1975).

[41] Cplt. ¶ 17.

-7-

that "[t]he PS3 is sold as more than just a gaming console, but as an entire 'system'" that included "system software updates."[42]  And in Paragraph 23, Plaintiffs unequivocally state that "[a]s part of the purchase of a PS3 system, Defendant issues periodic system software updates, also known as firmware, for the PS3."[43]  This allegation—that future firmware updates were part of the product that Plaintiffs purchased—is repeated in various other forms throughout the Complaint.[44]

Thus, Plaintiffs are attempting to state a negligence claim based on damage to the PS3 "system" because of an alleged problem in that "system" itself.  Plaintiffs make this explicit in their negligence count, stating:  "As a direct and proximate result of Defendant's conduct, the Firmware 3.0 and/or Firmware 3.01 updates performed defectively and caused the PS3, **of which the updates were a part**, to malfunction …."[45]

Based on these allegations, Plaintiffs' claim of negligence is barred by the economic loss rule.  As the California Supreme Court stated in *Robinson Helicopter Co., Inc. v. Dana Corp.*, "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses."[46]  The doctrine bars claims in tort—including claims of negligence—based on the sale of an allegedly defective product unless the purchaser can show some damages over and above "inadequate value, costs of repair and replacement of the defective product."[47]  In other words, a purchaser cannot bring a tort claim based on the sale of an allegedly defective product where the only damage is to the product itself.[48]

Here, Plaintiffs' allegations of negligence fall directly within the ambit of the economic loss rule—they are claiming damage to the "systems" they purchased due to an alleged defect in

---

[42] Cplt. ¶ 19.

[43] Cplt. ¶ 23.

[44] Cplt. ¶¶ 17, 19, 23, 37, 41, 64.

[45] Cplt. ¶ 64 (emphasis added).

[46] *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 989 (2004) (citations omitted).

[47] *Id.* (citing *Jimenez v. Superior Court*, Cal.4th 473, 482-83 (2002); *accord Aas v. Superior Court*, 24 Cal.4th 627, 640 (2000) (barring negligence claim); *Seely v. White Motor Co.*, 63 Cal.2d 9, 18-19 (1965)(same).

[48] *Robinson Helicopter*, 34 Cal.4th at 989 (2004).

DEFENDANT'S MOTION TO DISMISS
CASE NO.  C09-04701

part of those same "systems."[49]  This theory of recovery is directly foreclosed by the economic

loss rule, and the Court should dismiss the Third Claim for Relief on that basis.

### D.  Plaintiffs Lack Standing to Assert UCL Claims Because the Allegations in the Complaint do not Support a Restitutionary Remedy.

In their Fourth Claim for Relief, Plaintiffs attempt to assert claims under the UCL for

"unlawful" and "unfair" business practices.  Although Plaintiffs make the conclusory allegation

that they "suffered injury in fact and [have] lost money and/or property as a result of [SCEA's

alleged conduct]," the factual allegations of the Complaint do not support standing under the

UCL.

In November 2004, the voters of the State of California passed Proposition 64 which

changed the standing requirements for UCL actions by eliminating the previously existing

provision allowing "general public" actions, and substituting a new provision requiring that a

plaintiff must have "suffered injury in fact and lost money or property as a result of" any alleged

act of unfair competition.  Proposition 64 was intended to eliminate the cottage industry of UCL

lawsuits invented by lawyers for lawyers, and to return the courts to their intended function of

resolving real disputes brought by persons who are "actually injured by, and suffered

financial/property loss because of, an unfair business practice."[50]  As recently summarized by the

Fourth Appellate District of the California Court of Appeal:

> [I]n the aftermath of Proposition 64, only plaintiffs who have
> suffered actual damage may pursue a private UCL action.  A
> private plaintiff must make a twofold showing: he or she must
> demonstrate injury in fact *and* a loss of money or property caused
> by unfair competition.[51]

---

[49] Cplt. ¶¶ 17, 19, 23, 37, 41, 64.

[50] *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 228 (2006); *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1590 (2008); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 812 (2007).

[51] *Peterson* (emphasis in original); *see also Hall v. Time, Inc.*, 158 Cal.App.4th 847, 853 (2008) ("The voters' intent in passing Proposition 64 and enacting the changes to the standing rules in Business and Professions Code § 17204 was unequivocally to narrow the category of persons who could sue businesses under the UCL."); *Medina v. Safe-Guard Products, International, Inc.*, 164 Cal.App.4th 105, 115 (2008) ("The point of the Proposition 64 amendment was to impose additional requirements on plaintiffs beyond merely having suffered an 'unlawful, unfair or fraudulent business act or practice,' [footnote omitted] namely, having lost money or property as

DEFENDANT'S MOTION TO DISMISS
CASE NO.  C09-04701

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In order to satisfy this dual harm requirements necessary for UCL standing, the plaintiff must have suffered the harm because he or she paid the defendant money (or gave up property) in the course of a challenged transaction.

After Proposition 64, the California Courts of Appeal and the Ninth Circuit have held that in order to have UCL standing, a plaintiff must have suffered a loss supporting a restitutionary remedy.  Thus, in *Citizens of Humanity, LLC v. Costco Wholesale Corp*., the California Court of Appeal stated, "[b]ecause remedies for individuals under the [unfair competition law] are restricted to injunctive relief and restitution, the import of the [loss of money or property] requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution."[52]  The Ninth Circuit followed this same rationale in *Walker v. Geico General Ins. Co*., upholding dismissal of UCL class action claims because the named plaintiff did not allege facts supporting restitution.[53]

In *Korea Supply v. Lockheed Martin Corporation*, the California Supreme Court described the bounds of the restitutionary remedy available under the UCL, upholding a demurrer where the plaintiff failed to state facts supporting restitution.[54]  The plaintiff in *Korea Supply* alleged that defendant Lockheed Martin used unfair business practices to win a government contract which the plaintiff would have otherwise obtained.  The California Supreme Court held that no UCL claim was stated because "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff.[55]

Applying these holdings here, Plaintiffs do not have a claim because they do not allege that they gave any money to SCEA as a result of wrongful conduct.  The gravamen of Plaintiffs'

---

a result of the act or practice. [footnote omitted]") (emphasis in original).

[52] *Citizens of Humanity, LLC v. Costco Wholesale Corp*., 171 Cal.App.4th 1, 22 (2009) (quoting *Buckland*, 155 Cal.App.4th at 817; *Walker v. USAA Casualty Insurance Co*., 474 F.Supp.2d 1168, 1172 (E.D. Cal. 2007).

[53] *Walker v. Geico General Ins. Co*., 558 F.3d 1025, 1027 (2009).

[54] *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal.4th 1134, 1146 (2003).

[55] *Id.*

-10-

complaint is that they were harmed by Firmware 3.0 and/or 3.01 years after they purchased their PS3 systems.[56]  Although Plaintiffs allege that they "were informed by Sony that it would charge [them] approximately $150 to repair [their] PS3 system[s]," Plaintiffs do not allege that they ever actually paid that amount.[57]  Thus, as in *Korea Supply*, "[a]ny award that [Plaintiffs] would recover from [SCEA] would not be restitutionary as it would not replace any money or property that [SCEA] took directly from [Plaintiffs].[58]  Plaintiffs' claims are claims for damages—not restitution—and they accordingly lack standing under the UCL.

**IV. CONCLUSION**

Plaintiffs' allegations simply do not support the claims for relief asserted in their Complaint.  For the reasons set forth above, SCEA respectfully requests that the Court dismiss Plaintiffs' Complaint and every claim for relief set forth therein.

Dated:  February 11, 2010

DLA PIPER LLP (US)

By _____/s/ John R. Hurley_____
JOHN R. HURLEY
Attorneys for Defendant
SONY COMPUTER ENTERTAINMENT
AMERICA INC.

---

[56] Cplt. ¶¶ 6-10.

[57] Cplt. ¶¶ 6-10.

[58] *Korea Supply*, 29 Cal.4th at 1146.

DEFENDANT'S MOTION TO DISMISS
CASE NO.  C09-04701