**E-filed 08/23/2010****

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SONY PS3 LITIGATION | No. C 09-4701 RS |
| | **ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND** |
| _____/ | |

## I. INTRODUCTION

In this putative class action, plaintiffs are owners of Sony PlayStation 3 ("PS3") gaming systems, which they purchased through various retail channels. Sony periodically releases software "updates" for the PS3, which are available to owners for download through the internet. Plaintiffs allege that to continue to enjoy full functionality of their PS3 systems, including online gaming, they have no practical option other than to accept the downloads when they become available; while the devices may still play existing games on DVDs they already own, installing the updates is required to continue accessing online games and possibly newer DVD games as well.

This action arises from Sony's release of updates known as "Firmware 3.0" and "Firmware 3.01." Plaintiffs aver that installation of these updates caused various problems with some, but not

all PS3 systems.[1] Plaintiffs seek to hold Sony liable for the approximately $150 per machine it apparently will cost to repair them.

Sony moves to dismiss each of the four claims for relief set out in the consolidated complaint. For the reasons stated below, the motion will be granted, with leave to amend.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); see also *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

---

[1] Plaintiffs theorize that Sony used DVD players provided by a number of vendors at different points in time when manufacturing PS3 systems, and that the updates cause problems of varying degrees depending on the specific manufacturer or model of DVD player employed.

2

III. DISCUSSION

A. <u>Breach of Implied Warranty</u>

Sony contends that plaintiffs' claims for breach of implied warranty fail for three main reasons.[2] First, Sony points out that plaintiffs are not in privity with it, as they purchased their PS3 systems from independent retailers, not Sony itself. Plaintiffs acknowledge that privity does not exist in a strict sense, but argue that it should not be required. Relying on *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431 (1991), plaintiffs suggest that their implied warranty claim is viable because they had "direct dealings" with Sony—i.e., they obtained and installed the updates directly from Sony's website, not from the retailers that sold them the systems.

In *U.S. Roofing*, however, the question was whether the plaintiff had purchased a crane directly from its manufacturer or indirectly through a third party that provided financing. *See* 228 Cal.App.3d at 1441 ("The trial court . . . determined that the identity of the parties to the sale was a factual issue for the jury to decide.") Among other things, there was evidence that the plaintiff had paid substantial sums directly to the manufacturer. *Id.* at 1438. In *U.S. Roofing,* the court concluded that the jury's finding of a breach of implied warranty could stand because there was substantial evidence to support a conclusion that the crane was sold pursuant to an oral agreement between the manufacturer and the plaintiff, not because there is some "exception" to the privity requirement where there are some "direct dealings" to which a plaintiff can point. Here, there is no dispute that plaintiffs purchased their PS3 systems from retailers, and that at no point did they make any direct payments to Sony. Accordingly, *U.S. Roofing* aids them little.

Plaintiffs also cite to *In re HP Inkjet Printer Litigation*, 2006 WL 563048, at *6 (N.D. Cal. Mar. 7, 2006) for the proposition that a plaintiff may state an implied warranty claim where it alleges reliance on a defendant manufacturer's promotional materials. While in *HP Inkjet* the court did discuss the role of promotional materials in the context of evaluating an implied warranty claim, the case on which it relied held only that reliance on a manufacturer's written promotional materials

---

[2] Sony also argues that to the extent plaintiffs intend to rely on implied warranties arising under California's Song-Beverly Consumer Warranty Act, they have failed to allege that they purchased their PS3 systems in California, as required to invoke the protections of that statute. Plaintiffs do not address this point in their opposition, thereby implicitly conceding it.

3

may support an *express* warranty claim despite a lack of privity. *See Fieldstone Co. v. Briggs Plumbing Prods., Inc*., 54 Cal.App.4th 357, 369 n. 10 (1997).[3] Accordingly, plaintiffs have not established that an exception to the privity rule applies here.

Sony further challenges the claim for breach of implied warranty on the grounds that plaintiffs have not alleged the PS3 systems were defective at the time of purchase. This argument appears overly formalistic. If plaintiffs succeed in showing that the PS3 systems and the updates were sold as a complete "package," and that they satisfy, or are excused from satisfying, privity rules, they should be able to make claims based on defects that appeared when elements of the "package" were actually delivered, not just any that existed at the time of the original sale.

Sony's third attack on this claim for relief is its assertion that the implied warranty of merchantability only "provides for a minimum level of quality." Because plaintiffs have not alleged their PS3 systems became "totally inoperable" upon installation of the updates, Sony contends there is no claim. The complaint describes a variety of problems putative class members purportedly suffered, ranging from some that might be characterized as minor annoyances to complete inoperability, or "bricking." None of the named plaintiffs allege specifically which of these kinds of problems they experienced. While it seems likely that something less than a "totally inoperable" system could give rise to an implied warranty claim (assuming the other elements are satisfied), Sony is correct that not every performance issue would necessarily constitute a breach of implied warranties, any more than similar problems would give rise to such a claim were a consumer to encounter them straight out of the box. Accordingly, to state a claim, plaintiffs must allege with

---

[3] At oral argument, plaintiffs offered to amend to state an express warranty claim. Sony responded that any such claim would be barred by the applicable statute of limitations, given when plaintiffs purchased their systems. Because statute of limitations issues were not presented by this motion and were not briefed by the parties, it is not immediately clear whether the limitations period would begin to run upon plaintiffs' purchase of PS3 systems or on such later dates as they may have downloaded the allegedly defective updates. Accordingly, plaintiffs have leave to amend to state an express warranty claim if they in good faith believe there are facts that support both the existence of express warranties that were breached and that any such claims are not time-barred.

4

greater specificity that the problems they encountered were sufficiently severe to render their systems effectively unusable, even if not "totally inoperable."[4]

Finally plaintiffs appear to argue more generally that the particular circumstances here are such that they should be allowed to proceed on an implied warranty theory because (1) the right to receive future "updates" was part of what they purchased at the time the acquired their systems, and (2) those updates were always to come directly from Sony, which may not have been paid *directly* by plaintiffs, but which certainly profited from their purchases. At this juncture, plaintiffs have failed to offer sufficient authority to establish that such a theory is viable, in light of the general rule that direct privity is required. Conversely, however, Sony has not shown that plaintiffs will be unable to plead an implied warranty claim as a matter of law. Accordingly, the implied warranty claim is dismissed, but with leave to amend.

B. <u>Unjust Enrichment</u>

Sony contends, and plaintiffs concede, that California law does not recognize a separate claim for "unjust enrichment." *See Jogani v. Superior Court*, 165 Cal.App.4th 901, 911 (2008). Plaintiffs nonetheless argue that they have alleged facts sufficient to give rise to some sort of equitable remedy of "restitution," perhaps sounding in "quasi-contract." Plaintiffs also suggest that they should be permitted to maintain such an equitable claim in the alternative, pending a determination of whether they can recover damages under their contract or tort claims. Substance, of course, is more important than labels, and any failure by plaintiffs to attach the correct label to a claim for relief would not be fatal in and of itself. The complaint, however, does not presently articulate a sufficient basis for relief. Among other things, plaintiffs have not adequately explained how Sony has been wrongfully "enriched" or what they have paid to Sony that it should now be required to restore to them. Accordingly, this claim for relief is dismissed, with leave to amend.

---

[4] To the extent that any named plaintiff or putative class member experienced only minor degradations in system performance, such person likely would be unable to recover. That will not be an issue to be decided at the pleading stage, however, if plaintiffs are otherwise able to plead a viable claim.

5

C. Negligence

Plaintiffs' complaint, as presently constituted, is built around the central factual premise that PS3 systems and subsequent "updates" are marketed and sold as complete packages—that consumers have every right to expect that they are buying not just the hardware and pre-installed software that they obtain from retailers, but also an entire series of future upgrades and updates that they will be able to obtain at no additional cost directly from Sony. Given these allegations, Sony moves to dismiss the negligence claim for relief, arguing that it is barred by the "economic loss" rule. Under that rule, a plaintiff may not recover in tort for the purchase of an allegedly defective product unless he or she can show some damages over and above "inadequate value, costs of repair and replacement of the defective product." *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal.4th 979, 989 (2004). As the *Robinson* court explained, "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Id.*

Sony asserts that because plaintiffs have alleged that a PS3 system and the updates are a single product, then any damage caused by the updates is damage to the product itself, and the economic loss rule applies. In opposition, plaintiffs clarify that they seek to pursue a negligence claim only in the *alternative* to their other claims. At the hearing, they frankly admitted that if they prevail in their argument that a PS3 system and updates is a single product, the negligence claim will be barred. As plaintiffs point out, however, Sony intends to contest the allegations that updates and PS3 systems constitute one product. Should Sony prevail on that point, the economic loss rule would not be implicated, because plaintiffs could then argue that by providing defective updates, Sony negligently caused damage to property other than the updates themselves, i.e., to plaintiffs' PS3 systems.

While the present complaint does not plead the negligence claim in the alternative, none of plaintiffs' allegations regarding PS3 systems and upgrades being sold as a "package" rise to the level of a factual admission such that they should now be estopped from pleading that *if* the updates are proven to constitute a separate product, then they have a negligence claim. Accordingly, the negligence claim is dismissed, with leave to amend it to be a claim in the alternative.

## D. UCL

Plaintiffs seek "restitution" under California's unfair competition law, Business and Professions Code section 17200. As with their claim for "unjust enrichment," plaintiffs have failed to allege sufficient facts showing how Sony has been wrongfully "enriched," or what they have paid to Sony that it should now be required to restore to them. Accordingly, this claim for relief is also dismissed, with leave to amend.

## IV. CONCLUSION

Sony's motion to dismiss is granted. Plaintiffs shall file any amended complaint within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 08/23/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE